## SINATRA, Etc v STATE

Ohio Appeals, 6th Dist, Lucas Co

No 2914.   Decided May 9, 1934

Frazier Reams, Prosecuting Atty., Toledo, Joel S. Rhinefort and Arnold F. Bunge, Asst. Pros. Attys., Toledo, for defendant in error.

WASHBURN, PJ, FUNK and STEVENS, JJ, (9th Dist) sitting.

DeWitt Fisher, Toledo, and. A. J. Bianchi, Akron, for plaintiff in error.

**OPINION**

By FUNK, J.

The record in this case is quite long, and we therefore cannot go into a detailed analysis of all the evidence, so will refer particularly to the testimony of the defendant, to the other evidence only in a general way, and to some general principles controlling trial and reviewing courts.

It must be remembered that this question involves not merely the testimony of the two eye-witnesses as against that of the alibi evidence for defendant, but that the identification evidence and alibi evidence as given by said witnesses must be considered together with all the other evidence in the case, including the testimony of the defendant and his conduct after he knew he was suspected of being one of the persons who shot Kennedy.

In this connection it should be noted that defendant testified that he was at a place known as "State Service" on the night of the murder, from about 8:30 o'clock p. m until 1 o'clock a. m., and that he obtained a Toledo newspaper about midnight, giving an account of the murder, which account mentioned defendant as one of the persons suspected.

It should be further noted that, after defendant thus knew he was suspected, he did not go to the proper officers and inform them that he had been at the State Service at the time of the shooting and give them the names of the persons who saw him there; instead, according to his own testimony, he remained there until 1 o'clock a. m., when he drove to Detroit for the purpose of going to the funeral of the father-in-law of Thomas (Yonnie) Licavoli, where he met his friend Licavoli, gave said newspaper to him, and remained with him several hours. The defendant's own testimony further shows that he then went to the home of a friend in Detroit, where he remained in seclusion for three days; that he communicated with friends in Toledo before he returned to Toledo; and that upon his return he went direct to the home of said Licavoli, where he was arrested before he had gotten out of his automobile. Defendant was then detained some twelve days and released because of failure up to that time to find sufficient evidence to hold him longer.

Defendant further testified that, although he had lived in Toledo since 1913, except when he was imprisoned for robbery or the violation of some other law, he left Toledo the next day after he was so released and went to Buffalo, N. Y., where he lived with a relative, and remained there until on or about Sept. 27, when he went to Akron, where, on Sept. 28, he was found under the bed in a room in an apartment house, which room he was occupying with a woman he had known only a few hours, and at which place he was arrested by police officers. When questioned by the arresting officers he gave his business as that of traveling clothing salesman, but he has made no further claim of being such a salesman, although some clothing samples were found in the automobile in which he went to Akron.

Defendant also testified that he had been in the bootlegging business as a means of livelihood ever since he had been released from the penitentiary in 1922; that he knew the police officers in Toledo were looking for him while he was in Buffalo; and that no one in Toledo but his wife knew where he was.

It is thus apparent that defendant was, for some unexplained reason, at least evading the police officers. The jury could, of course, consider this conduct of defendant, along with all the other evidence. .

The record also discloses that there was

some conflict and difference in the testimony of the witnesses for defendant as well as those for the state. Counsel for defendant, of course, recognize the established rule followed in the trial court, that the jurors may believe or disbelieve all or any part of the testimony of any witness, and while the jurors are instructed that they may consider the manner and demeanor of the witnesses and their interest, if any, in the result of the case, they are not necessarily bound thereby and may believe an interested as against a disinterested witness, should they be convinced of the truth of the testimony of the interested witness, or that the disinterested witness was probably mistaken, or that his opportunity of knowing the things concerning which he was testifying was imperfect.

Said counsel are also no doubt familiar with the well settled rules governing reviewing courts in considering the weight of the evidence, concerning which it is only necessary to say:

First, that when a case has been fully and fairly tried to a jury and submitted to it upon a question of fact, the verdict of said jurors—who saw and heard the witnesses testify and observed their manner and demeanor upon the stand, and which verdict has been approved by the trial judge, who had the same opportunity of observing the witnesses—should not be reversed upon the weight of the evidence unless such verdict is so clearly unsupported by the evidence as to indicate some misapprehension or mistake, bias, passion or prejudice, or wilful disregard of duty upon the part of the jury, and that a mere difference of opinion on the part of the reviewing court with that of the jury is not sufficient to reverse a verdict as being against the weight of the evidence.

16 Oh Ap 132, Cleve. Ry. Co. v O'Reilly.

23 Oh Ap 176, (5 Abs 340), Moeskops v Bodman.

23 Oh Ap 445, (5 Abs 760), Hamilton v Purchase Co.

23 Oh Ap 522, (4 Abs 170), Hayes v Halle.

22 Oh St 118, at p. 134, Dean et v King & Co.

106 Oh St 387, Schendel v Bradford, Admr.

107 Oh St 75, Silverglade et v Von Rohr, etc.

108 Oh St 388, Toledo, C. & O. R. R. Co. v Miller.

Second, in determining whether or not a judgment in a criminal case is manifestly against the weight of the evidence, the reviewing court should take into consideration the degree of proof required in a criminal case.

20 Oh Ap 112 (4 Abs 482), Glowaski v State.

20 Oh Ap 528 (2 Abs 279), City of Lorain v Jameson.

Having carefully read the record with these rules in mind, and without attempting further comment or analysis of the evidence, it is sufficient to say that, under the record in this case, we do not find that the evidence is such as to warrant a reviewing court in reversing the judgment on the ground that it is against the weight of the evidence.

Second, counsel for defendant contend that—

"The court erred in not granting a new trial on defendant's supplemental motion for a new trial on the ground of newly discovered evidence material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial."

The defendant filed ten affidavits in support of his supplemental motion for a new trial on the ground of newly discovered evidence, and the prosecuting attorney filed nine counter-affidavits.

A reading of the affidavits on behalf of the defendant discloses that the information contained therein is for the most part merely of a cumulative or contradictory and impeaching character, and is not such as would probably require a different verdict from that which was rendered; and this is especially true when the affidavits on behalf of defendant are considered together with the counter-affidavits on behalf of the state, some of which counter-affidavits were given by the same persons who signed some of the affidavits for the defendant. Moreover, some of the information contained in said affidavits tends to corroborate rather than contradict the evidence on behalf of the state.

It is therefore not of controlling importance whether or not counsel for defendant could, with reasonable diligence, have discovered and produced at the trial the testimony of the five persons who were not witnesses and whose affidavits said counsel secured in support of the motion for a new trial. We therefore find that the court did not err in refusing to grant a new trial on the ground of newly discovered evidence.

Third, it is contended (a) that "the court erred in admitting evidence over the objection and exception of defendant," and (b) that "the court erred in its charge to the jury."

(a) Complaint is made as to the admission of the testimony of most of the witnesses for the state, on the theory that they were unnecessary after defendant had admitted that the said Kennedy had been killed at the time and place alleged in the indictment (defendant claiming only that he did not do the shooting and had nothing to do with it).

We cannot agree with this contention, and find no error prejudicial to defendant in the admission of this evidence. We think that the state had a right to show the facts surrounding the shooting of Kennedy, the number of bullets that entered his body and what part of his body they entered, the finding of the automatic pistol and revolver, and that certain bullets taken from the body of said Kennedy were fired from one or the other of the guns found, as at least reflecting upon the degree of the crime committed and whether or not the jury should recommend mercy; and we also think that the evidence as to the fight between Kennedy and Mirabella was competent as some evidence tending to show ill feeling between Kennedy and defendant.

Some complaint is also made as to the admission of certain hearsay evidence, and the offer of a number of exhibits which the court refused to admit in evidence.

Under the record pertaining to these matters, we find no reversible error in the ruling of the court concerning them.

(b) As to the error claimed in the charge:

The record discloses that the court apparently overlooked instructing the jury concerning the statute providing for murder in the first degree and the effect of using one or the other of the two forms of verdict furnished to them for use, should they find the defendant guilty—one of which forms recommended mercy and the other not. The court then gave such instruction at the end of the charge without again referring to the form of verdict the jury should use if they found the defendant not guilty.

No complaint is made as to the instruction itself; the only complaint is that the court thus unduly emphasized the forms of verdict finding the defendant guilty at the very end of the charge.

We find no merit in this contention. Moreover, counsel made no request for further reference to the form for a verdict of not guilty and did not call the attention of the court to such omission, if it could be said to be an omission. We should perhaps say in this connection that the charge as a whole was eminently fair to defendant.

Fourth, counsel for defendant complain (a) of "misconduct on the part of the prosecuting attorney in the voir dire examination of jurors, in the opening statement to the jury, and during the trial"; (b) of "misconduct of the prosecutor in closing argument, and error of the court in not stopping argument and declaring mistrial upon motion of defendant at the conclusion of such argument"; and (c) that "the verdict of the jury was influenced by passion and prejudice."

The complaint as to the voir dire examination of the jurors by the prosecuting attorney pertains largely to the asking of jurors whether they were acquainted with certain persons, whether they knew defendant by various aliases, and whether they were acquainted with the others indicted with defendant.

We find no error in asking the jurors if they knew certain persons, and believe it was within the right of the state, as well as the defendant, to know who the prospective jurors were and their business and social environment. Moreover, most of the names mentioned in the briefs were referred to more or less in the evidence as friends or acquaintances of defendant, or persons about the State Service, which was apparently a distributing place for punch boards and slot machines, and where defendant claimed he was at the time of the shooting.

As to the claimed misconduct of the prosecuting attorney and his assistants, in the opening statement, during the taking of testimony and in the closing argument:

We have carefully examined each of these complaints and find that, almost without exception, they were provoked by what was said or done by counsel for defendant. While we do not approve of some of the arguments used by the prosecuting attorney and his assistants, we also do not approve of some of the arguments used by counsel for defendant. The record clearly discloses an attitude of hostility between attorneys on both sides, from the very start of the trial, which no doubt caused many things to be done and said on both sides that would better have been omitted. This was unfortunate and is to be regretted. However, when we consider the claimed misconduct on the part of the prosecuting attorney and his assistants in connection with what was said and done by counsel for defendant from the beginning, including the voir dire examination of jurors, during the taking of testimony, and in their arguments to the jury, we cannot say that the matters complained of constitute such misconduct on the part of the prosecuting

attorney and his assistants as would warrant a reversal of the judgment of the trial court for that reason.

Neither can we say, under the record as a whole, that the verdict was influenced by passion or prejudice.

Finding no reversible error in the record of this case, the judgment is affirmed.

WASHBURN, PJ, and STEVENS, J, concur in judgment.